IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Douglas Willard,

      Plaintiff,

      v.                       Case No. 2:12-cv-266

The Ohio Operating Engineers
Pension Plan, et al.,

      Defendants.

OPINION AND ORDER

    This is an action filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff Douglas Willard, a former employee of the Ohio Operating Engineers, asserts claims against the Ohio Operating Engineers Pension Plan ("the Pension Plan") and its Board of Trustees, and against the Ohio Operating Engineers Health and Welfare Plan ("the Welfare Plan") and its Board of Trustees. This matter is before the court on defendants' motion pursuant to Fed.R.Civ.P. 12(c) for partial judgment on the pleadings.

I. Rule 12(c) Standards

    Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed.R.Civ.P. 12(b)(6). See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 582 (6th Cir.

2007)(internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Id. (citing Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. Fed.R.Civ.P. 12(c); Fed.R.Civ.P. 7(a) (defining "pleadings" to include both the complaint and the answer); Housing Authority Risk Retention Group, Inc. v. Chicago Housing Auth., 378 F.3d 596, 600 (7th Cir. 2004). While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public

2

record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account." Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008)(quoting Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)). The court may also consider exhibits attached to defendant's motion so long as they are referred to in the complaint and are central to the claims contained therein. Bassett v. National Collegiate Athletic Ass'n 528 F.3d 426, 430 (6th Cir. 2008); see also Nixon v. Wilmington Trust Co., 543 F.3d 354, 357 (6th Cir. 2008)(a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims).

II. Plaintiff's Claims

Plaintiff alleges in his complaint filed on March 28, 2012, that he was employed with the Ohio Operating Engineers in 1992 as a heavy crane operator, and was a participant in the Welfare and Pension Plans. Complaint, ¶¶ 5, 17. After being diagnosed with non-Hodgkin's lymphoma in 2005, he was awarded pension disability benefits under the Pension Plan effective April 1, 2006, and under the Welfare Plan effective May 26, 2006. Complaint, ¶¶ 23-24. On March 18, 2011, plaintiff received a letter from Ray Orrand, Administrator of the Pension Plan, requesting that plaintiff provide his tax records to verify that he was not working as an operating engineer in excess of forty hours per month. Complaint, ¶ 25. Plaintiff provided his 2010 W-2 form. Complaint, ¶ 26. Plaintiff was notified by letter dated April 18, 2011, that his benefits under the Pension Plan would be terminated effective May 1, 2011, on the grounds that plaintiff had been working as a farm

3

hand and driver and was no longer qualified to receive disability pension benefits. Complaint, ¶¶ 27-28. Plaintiff appealed this determination through a letter from his attorney dated May 12, 2011, and plaintiff's benefits were reinstated for the month of June, 2011. Complaint, ¶¶ 34-36, 38-39.

Plaintiff further alleges that on July 20, 2011, he submitted to a physical examination by Doctor Shadel pursuant to the terms of the Welfare Plan. Complaint, ¶¶40-41. By letter dated August 8, 2011, signed by Ray Orrand as Administrator of the Welfare Plan, plaintiff was notified that his benefits under the Welfare Plan were being terminated on the grounds that Dr. Shadel did not find any permanent total disability from working as a heavy equipment operator because plaintiff's non-Hodgkin's lymphoma was in remission. Complaint, ¶¶ 42-43.

By letter dated August 15, 2011, signed by Ray Orrand as Administrator of the Pension Plan, plaintiff was notified that his benefits under the Pension Plan were terminated because plaintiff was working as a dump truck driver and had a current commercial driver's license. Complaint, ¶¶ 42, 44. Plaintiff alleges that the statement in this letter that plaintiff had admitted to Dr. Shadel that he worked as an operating engineer after 2005 was false. Complaint, ¶ 46. By letter of plaintiff's counsel dated October 14, 2011, plaintiff appealed this determination to the Pension Plan Board. Complaint, ¶ 47. By letter dated February 3, 2012, plaintiff was notified by the Board of the Pension Plan that his appeal was denied. Complaint, ¶ 52. Plaintiff alleges that the Board made false statements in this decision regarding plaintiff's employment. Complaint, ¶ 54.

In Count One of the complaint, plaintiff asserts a claim under 29 U.S.C. §1132(a)(1)(B), which authorizes actions to recover benefits due under the Plans, to enforce rights under the Plans, and to clarify rights to future benefits under the terms of the Plans.  In Count Two of the Complaint, plaintiff asserts a claim under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty against the Board of the Pension Plan, alleging that the Board breached its fiduciary duty by fabricating facts as the basis for its denial of plaintiff's pension disability benefits.

Attached to defendants' motion are certain provisions of the Pension and Welfare Plans at issue in the complaint, Doc. 7, Exs. 1-3; the letter of August 8, 2011, regarding the termination of plaintiff's membership in the Welfare Plan, Doc. 7, Ex. 4; the letter of August 15, 2011, regarding the termination of plaintiff's Pension Plan benefits, Doc. 7, Ex. 5; the appeal letter of October 14, 2011, Doc. 7, Ex. 6; and the February 3, 2012, letter regarding the decision of the Pension Plan Board, Doc. 7, Ex. 7.  Because the Plans and the letters were referred to in plaintiff's complaint and are central to plaintiff's claims, these documents may be considered in ruling on defendants' motion.

The letter of August 8, 2011, noted that plaintiff was examined on July 20, 2011, by Dr. Shadel, who opined that plaintiff's non-Hodgkin's lymphoma was successfully treated and in remission, and that there was no evidence of current disability related to that condition.  The letter notified plaintiff that his Class 6 Membership in the Welfare Plan would be terminated as of September 1, 2011.  The letter also informed plaintiff concerning his right to appeal the determination to discontinue his membership

5

in the Welfare Plan, and advised him that failure to file an appeal within 180 days "may bar any review of the matter by the Trustees or a court of law."  <u>See</u> Ex. 4.  The letter was signed by Ray Orrand as Plan Administrator.

The text of Section IX, ¶ I of the Welfare Plan accompanied the letter.  That section describes the appeal process for eligibility determinations where the claimant is not making a claim for benefits but wants to appeal the Plan Administrator's determination that he is not an eligible member.  Section IX, ¶ I.1.  In particular, Section IX provides:

> If the Plan Administrator determines that a claimant is not eligible as a Member or Eligible Dependent under Section II, the claimant may request that the Trustees review that determination.  The request must be made in writing, must include the reasons for requesting the review, and must be submitted to the Plan Administrator within 180 days after the date that the determination is made.  The claimant may submit additional evidence of eligibility.  Plan documents and other materials pertaining to the claimant's status will be available for the claimant's review.

Section IX, ¶ I.2.  Section IX further states: "No lawsuit can be brought to recover under the Plan unless the claimant has complied with the applicable appeal procedures and completed the appeal process."  Section IX, ¶ I.3.

The letter of August 15, 2011, notified plaintiff that his benefits from the Pension Plan were being suspended effective September 1, 2011, under Article 6, Section 6.06 of the Pension Plan.  That section requires a participant to "notify the Fund Administrator of certain details of any employment after such benefits have commenced."  Section 6.06(f).  That section also requires the Plan Administrator to suspend pension benefits upon

learning of subsequent potential service of 41 hours or more in a one-month period for an employer within the jurisdiction of the Union.  The letter noted that the Pension Plan had received information that plaintiff told Dr. Shadel during his recent disability examination that he had worked as an operating engineer after 2005.  The letter also referred to documents indicating that plaintiff worked as a dump truck driver hauling gravel in 2010 and had a current commercial driver's license.  The letter stated that "it appears that you are in violation of the Plan's suspension of benefits provision" and informed plaintiff that his benefits were being suspended pursuant to Section 6.06(f) of the Pension Plan. The letter advised plaintiff that he could pursue an appeal of the decision to suspend his benefits, and that the decision would be reviewed by the Board of Trustees.  The letter was signed by Ray Orrand as Plan Administrator.  See Ex. 5.

The record also includes the October 14, 2011, appeal letter sent by plaintiff's counsel to Ray Orrand.  This document referred to the Pension Plan's letter of August 15, 2011, suspending plaintiff's benefits under the Pension Plan, and stated that "this letter serves as a timely written appeal to the suspension of benefits as set forth in your August 15, 2011 letter."  Counsel's letter makes no reference to the Welfare Plan's letter of August 8, 2011, relating to the discontinuation of plaintiff's membership in the Welfare Plan.  See Ex. 6.

By letter dated February 3, 2012, plaintiff was notified of the Pension Plan Board of Trustees' decision to uphold the suspension of his pension benefits.  The letter cites Article 6, Section 6.06(a) of the Pension Plan, which provides that any

benefit otherwise payable under the Plan "shall be permanently forfeited for any month in which a Participant or former Participant is credited with 41 or more hours of service in that month" within the geographical location of the union which employed the participant.  See Ex. 7.  Under Section 6.06(a) of the Pension Plan, the Administrator of the Plan must suspend pension benefits "upon learning of subsequent potential service of 41 Hours of Service or more for an employer within the jurisdiction of the Union unless it is unreasonable under the circumstances for the Fund Administrator to presume that the Participant was engaged in such service."  See Ex. 7.

The February 3, 2012, letter also referred to evidence obtained by the Plan as constituting support for the Pension Plan's presumption that plaintiff was working more than 41 hours as an operating engineer, including a statement allegedly made by plaintiff to Dr. Shadel about working as an operating engineer after 2005, photographs of plaintiff operating a front loader, a 2011 video of plaintiff hauling gravel, and an advertisement from 2010 and 2011 for Willard Gravel, listing plaintiff's address, which offered driveway, bank run, top soil, fill material, and other services.  The letter concluded by stating that "the Board has decided to affirm the Plan's initial decision to suspend your benefits."  See Ex. 7.  The letter was signed by Ray Orrand as the Fund Administrator.

III. Exhaustion of Administrative Remedies

Defendants have moved to dismiss Count One of the complaint insofar as it is asserted against the Welfare Plan and the Board of the Welfare Plan on the ground that plaintiff failed to exhaust the

administrative remedies afforded by the Welfare Plan. "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991); see also Coomer v. Bethesda Hospital, Inc., 370 F.2d 499, 504 (6th Cir. 2004). The exhaustion requirement enables plan fiduciaries to efficiently manage their funds, correct their errors, interpret plan provisions, and assemble a factual record which will assist the court in reviewing the fiduciaries' actions. Weiner v. Klais & Co., Inc., 108 F.3d 86, 90 (6th Cir. 1997).

The record indicates that plaintiff's appeal letter of October 14, 2011, only addressed the August 15, 2011, decision of the Pension Plan, and made no reference to the August 8, 2011, decision of the Welfare Plan. Plaintiff now argues that the Welfare Plan only requires administrative exhaustion of claims for benefits, and that the exhaustion requirement does not apply to decisions such as the August 8, 2011, decision which terminated his membership in the Welfare Plan. In his response, he quotes language from an unidentified paragraph of Section IX of the Welfare Plan which describes the appeals procedure for submitting a request for review of a denied claim for benefits. See Doc. 10, p. 5. However, plaintiff ignores the Welfare Plan provisions in Section IX, ¶ I.1-.3, attached to the decision letter of August 8, 2011, which describe the procedure for appeals of determinations regarding eligibility for membership in the Welfare Plan. Those provisions clearly mandate exhaustion of administrative remedies in cases such as this one where the Plan Administrator determined that plaintiff

9

was not eligible to be a member of the Welfare Plan.

Plaintiff also argues that exhaustion of administrative remedies would have been futile in this case. The failure to exhaust administrative remedies is excused where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate. <u>Coomer</u>, 370 F.3d at 505 (citing <u>Fallick v. Nationwide Mutual Ins. Co.</u>, 162 F.3d 410, 419 (6th Cir. 1998)). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." <u>Fallick</u>, 162 F.3d at 419. A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision. <u>Id.</u>

The administrative futility doctrine has been applied in cases where the plaintiff's action is directed to the legality of the plan, not to a mere interpretation of it, <u>see</u> <u>Constantino v. TRW, Inc.</u>, 13 F.3d 969, 975 (6th Cir. 1994), and when the defendant lacks the authority to institute the decision sought by plaintiff, <u>see</u> <u>Hill v. Blue Cross & Blue Shield of Mich.</u>, 409 F.3d 710, 719 (6th Cir. 2005). Futility has also been recognized where multiple claims are so similar that the denial of one claim which was exhausted forecloses eligibility for relief on the other, or demonstrates with certainty that the unexhausted claim will also be denied. <u>See</u> <u>Dozier v. Sun Life Assurance Co. of Canada</u>, 466 F.3d 532, 535-36 (6th Cir. 2006).

This is not a case in which plaintiff has attacked the legality of the plan, nor is there any indication that the Welfare Plan Board would have been unable to reverse the Welfare Plan

10

Administrator's decision if plaintiff had appealed. Rather, plaintiff argues that his Welfare Plan claim was so similar to his Pension Plan claim that the denial of his Pension Plan appeal foreclosed any remedy on his Welfare Plan claim. Plaintiff argues that an appeal from the Welfare Plan's decision would have been unsuccessful because the definition of "disability" is the same in both plans.

The decision letters do not support plaintiff's argument. The issue before the Welfare Plan Administrator was whether plaintiff continued to be permanently and totally disabled under §II.F.1.(a) of the Welfare Plan, based on the opinion of Dr. Shadel. In contrast, the issue before the Pension Plan Board on appeal was whether the Pension Plan Administrator could reasonably presume that plaintiff had worked over 41 hours in a month as an operating engineer within the jurisdiction of the Union and failed to provide notice to the Fund Administrator as required under Section 6.06(f) of the Pension Plan. Although plaintiff attempted to argue on appeal before the Pension Plan Board that he was disabled and incapable of working as an operating engineer, the decision letter of February 3, 2012, specifically states that "[t]he issue before the Board, however, was not whether you are still disabled, but rather whether it was reasonable for the Plan to presume you were working more than 41 hours a month as an operating engineer." Ex. 7. Thus, this is not a case where the issues before the Plans were so similar that an adverse decision in one appeal would necessarily result in an adverse decision in the other.

Plaintiff also notes that the letters he received were all signed by Ray Orrand as Plan Administrator. However, the Plan

Administrator does not review his own decisions on appeal. Rather, the Plan provisions in the record indicate that appeals under both Plans are decided by the respective Boards of Trustees of those Plans. The Welfare Plan has its own Board of Trustees, as does the Pension Plan. These two Boards have been named as separate defendants in the complaint. In signing the February 3, 2012, letter as Plan Administrator, Ray Orrand was simply performing the administerial function of reducing the decision of the Pension Plan Board to writing and relaying that decision to plaintiff. The fact that the Pension Plan Board denied plaintiff's appeal from the Pension Plan's decision rendered on August 15, 2011, does not mean that the Welfare Plan Board, a separate entity, would certainly have denied plaintiff's appeal from the Welfare Plan's decision rendered on August 8, 2011, which involved a distinct issue.

The record demonstrates that plaintiff failed to exhaust his administrative remedies in regard to his claim against the Welfare Plan and the Welfare Plan Board, and it has not been shown that exhaustion of that claim would have been futile. Count One insofar as it is asserted against the Welfare Plan and the Welfare Plan Board will be dismissed without prejudice as to those defendants due to the nonexhaustion of administrative remedies. See Ravencraft v. UNUM Life Ins. Co. of America, 212 F.3d 341, 344 (6th Cir. 2000).

IV. Breach of Fiduciary Duty Claim

The defendant Pension Plan and the Board of the Pension Plan also seek dismissal of Count Two of the complaint, which charges them with a breach of fiduciary duty. Plaintiff alleges in Count Two that the Board "breached its fiduciary duty by fabricating

12

facts as a basis for its denial of Plaintiff's disability benefits." Complaint, ¶ 85. Plaintiff alleges that the statement made by Ray Orrand in his August 15, 2011, letter that plaintiff admitted to the medical examiner that he worked as an operating engineer after 2005 was false. Complaint, ¶ 46. Plaintiff further alleges that in its decision letter of February 3, 2012, the Board made false claims regarding Plaintiff's state of employment. Complaint, ¶ 54. Plaintiff then alleges that his employment as a dump truck driver did not amount to performance as an operating engineer. Complaint, ¶ 56.

Defendants argue that plaintiff's breach of fiduciary claim is nothing more than a restatement of the §1132(a)(1)(B) claim asserted in Count One, and therefore, relief is not available under §1132(a)(3). In Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), the Supreme Court noted that "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to interpretation of plan documents and the payment of claims" through a cause of action under §1132(a)(1)(B). The remedy for "other breaches of other sorts of fiduciary obligation" may be sought under the "catchall" provision in §1132(a)(3). Id. The Supreme Court concluded that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be appropriate." Id. at 515.

The Sixth Circuit in Wilkins v. Baptist Healthcare Sys. Inc., 150 F.3d 609, 615 (6th Cir. 1998), interpreted Varity Corp. as limiting "the applicability of §1132(a)(3) to beneficiaries who may not avail themselves of §1132's other remedies." See also Tackett

13

v. M & G Polymers, USA, LLC, 561 F.3d 478, 491 (6th Cir. 2009)(relief under §1132(a)(3) not appropriate where plaintiff merely "repackages" a §1132(a)(1)(B) benefits claim); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 454 (6th Cir. 2003)(affirming dismissal of plaintiff's claim for breach of fiduciary duty because §1132(a)(1)(B) provided him with a remedy for the alleged injury of denial of benefits and permitted him to bring a lawsuit to challenge the denial of benefits).    In considering whether to dismiss a §1132(a)(3) claim, the court is not required to wait and see if plaintiff prevails on his §1132(a)(1)(B) claim, as the "deciding factor ... is not whether a plaintiff has recovered under §1132(a)(1)(B), but rather, whether a plaintiff may recover." Moss v. Unum Life Ins. Co., No. 11-6017 (unreported), 2012 WL 3553497 at *5 (6th Cir. Aug. 17, 2012).

Under circumstances not found in the present case, the Sixth Circuit has held that an action under §1132(a)(3) is available.  In Hill, 409 F.3d at 718, the Sixth Circuit recognized that there are some circumstances under which an ERISA plaintiff may simultaneously bring claims under both §1132(a)(1)(B) and §1132(a)(3).  The court held that where an award of individual benefits pursuant to §1132(a)(1)(B) could not provide an adequate remedy for the alleged injury to the plaintiffs caused by the plan's alleged improper methodology for handling all emergency-medical-treatment claims for which plaintiffs sought injunctive relief, outright dismissal of the plaintiffs' §1132(a)(3) claims was in error.  Id.; see also Thornton v. Graphic Communications Conference of Int'l Brotherhood of Teamsters Supplemental Retirement and Disability Fund, 566 F.3d 597, 617 (6th Cir.

14

2009)(§1132(a)(3) claim appropriate where plaintiff sought plan-wide injunctive relief prohibiting board from amending plan to eliminate post-retirement benefits increases).

In Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 840-842 (6th Cir. 2007), the Sixth Circuit concluded that plaintiff had alleged two separate and distinct injuries: an erroneous interpretation of plan language by the claims administrator, resulting in a wrongful denial of long-term disability benefits subject to redress under §1132(a)(1)(b); and a breach of fiduciary duty by the employer, which had no involvement in claims administration, based on the employer's alleged misrepresentation concerning the duration of benefits, a claim that could only be addressed under §1132(a)(3). The court noted that if plaintiff had alleged that the claims administrator breached its fiduciary duty by wrongfully denying benefits, that claim would be duplicative of his denial of benefits claim. Id. at 841.

Here, plaintiff has alleged that Ray Orrand and the Pension Plan Board relied on false information in terminating his pension benefits. He makes conclusory allegations that the Board fabricated evidence in denying his pension benefits. These allegations do no more than express plaintiff's disagreement with the quality of the evidence supporting the Pension Board's decision to discontinue his pension benefits. Count Two is, in essence, a reiteration of the §1132(a)(1)(B) claim for benefits in Count One viewed from the perspective of whether the Pension Board's decision was supported by sufficient evidence, or was arbitrary and capricious. Unlike the plaintiffs in Hill and Thornton, plaintiff has alleged no facts showing a plan-wide policy or practice of

15

violating ERISA which can be rectified only by injunctive relief. Plaintiff has not alleged facts showing that the Pension Plan Board engaged in a general practice of routinely fabricating evidence or knowingly considering false evidence in ruling on appeals.  Unlike the situation in <u>Gore</u>, where the plaintiff could not obtain relief for his employer's misrepresentations by way of a §1132(a)(1)(B) benefits claim, plaintiff here may obtain redress for the Pension Plan Board's alleged reliance on false information in denying pension benefits by advancing that argument in pursuing his benefits claim under §1132(a)(1)(B).  <u>See Bagsby v. Central States, Southeast & Southwest Areas Pension Fund</u>, 162 F.3d 424, 430 (6th Cir. 1998)(noting that an alleged breach of fiduciary duty may be relevant to a §1132(a)(1)(B) claim asserting that plan administrators acted arbitrarily and capriciously in denying benefits); <u>Johns v. Blue Cross Blue Shield of Michigan</u>, No. 2:08-CV-12272, 2009 WL 646636 at *7 (E.D.Mich. Mar. 10, 2009)("The proper remedy for breaches of fiduciary duty that take the form of denials of plan benefits is ... a suit under §1132(a)(1)(B).").

The court concludes that plaintiff's breach of fiduciary duty claim against the Pension Plan and the Board of the Pension Plan is a claim for which relief may be sought as part of his Count One benefits claim under §1132(a)(1)(B).  The Count Two §1132(a)(3) claim will be dismissed.

<u>V. Conclusion</u>

In accordance with the foregoing, defendants' motion for partial judgment on the pleadings (Doc. 7) is granted to the extent that: 1) the claims against the Ohio Operating Engineers Health and Welfare Plan and the Ohio Operating Engineers Health and Welfare

Plan Board of Trustees are dismissed without prejudice for failure to exhaust administrative remedies; and 2) Count Two of the complaint is dismissed.  This case remains pending as to the Count One claims against the Ohio Operating Engineers Pension Plan and the Ohio Operating Engineers Pension Plan Board of Trustees.


Date: January 30, 2013              s/James L. Graham
                              James L. Graham
                              United States District Judge

17